UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BACK SHOP TIEFKUHL GMBH, | No.  2:12-cv-0540 WBS KJN |
| Plaintiff, | |
| v. | <u>ORDER AND</u> |
| GN TRADE, INC., et al., | <u>FINDINGS AND RECOMMENDATIONS</u> |
| Defendants. | |

Presently before the court is plaintiff Back Shop Tiefkühl GmbH's ("plaintiff") motion for default judgment against defendants GN Trade, Inc. ("GN Trade") and Vladimir Demin ("Demin") (collectively, defendants).[1]  (ECF No. 68.)  After defendants failed to file an opposition to the motion in accordance with Local Rule 230(c), the June 5, 2014 hearing on plaintiff's motion was vacated, and the motion was submitted on the record and briefing pursuant to Local Rule 230(g).  (ECF No. 74.)

After considering the briefing in support of plaintiff's motion, the court's record, and the applicable law, the court recommends that plaintiff's motion for default judgment be granted in part upon the terms set forth below.

////

---

[1] This motion was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(19) and 28 U.S.C. § 636(b)(1).

1

I.     BACKGROUND

Plaintiff commenced this action on February 29, 2012.  (See Complaint, ECF No. 2 ["Compl."].)  According to the complaint, plaintiff, founded in 1998, is a German corporation and a subsidiary of Germany's biggest private bakery, the Harry-Brot GmbH, and "has achieved an international reputation for its diverse line of high quality frozen European bakery products." (Compl. ¶¶ 4, 9.)  Plaintiff's bakery products are sold throughout the United States, and have been for over 8 years, under the name and mark "Back Shop," which has allegedly become publicly associated exclusively with plaintiff and its products, and in which plaintiff claims to have established protectable common law trademark rights.  (Id. ¶ 10.)  According to plaintiff's complaint, defendant GN Trade, which does business under the name and mark "Backer Back," is a California corporation with its principal business office in Sacramento; and defendant Demin, a resident of Sacramento, is involved with GN Trade in some capacity.  (Id. ¶¶ 5-6.)[2]  In a filing by defendant Demin's former counsel, the attorney indicated that Demin is the Chief Executive Officer of GN Trade.  (ECF No. 20 at 3.)

Plaintiff essentially alleges that, in the six months prior to the filing of the complaint, plaintiff discovered that defendants had been selling Back Shop products through improper and illegal means, including by: (a) misappropriating plaintiff's website through using on defendants' own website exact copies of plaintiff's product photographs, product nomenclature, product descriptions, and nutrition information without plaintiff's consent; and (b) selling plaintiff's Back Shop products by removing or obliterating plaintiff's label and affixing defendants' own label in its place. (Compl. ¶¶ 11-16.)  Plaintiff's complaint asserts claims for (1) false designation of origin under 15 U.S.C. § 1125(a)(1)(A); (2) false advertising under 15 U.S.C. § 1125(a)(1)(B); (3) copyright infringement under 17 U.S.C. §§ 101 et seq.; and (4) unfair business practices under Cal. Bus. & Prof. Code §§ 17200 et seq. against all defendants.  (Id. ¶¶ 17-40.)

////

---

[2] The complaint additionally named as defendants Vladimir Shevschenko and Alex Almansky, who were also alleged to be involved with GN Trade in some capacity. (Compl. ¶¶ 5-6.)  However, as discussed below, plaintiff's claims against these other defendants have since been resolved.

On August 29, 2013, after defendants' counsel was permitted to withdraw, and defendants failed to comply with their discovery obligations and several court orders, the court struck GN Trade and Demin's operative answers, and directed the Clerk of Court to enter their default. (ECF Nos. 54.)[3] The Clerk entered defendants' GN Trade and Demin's default that same day. (ECF No. 55.)

Subsequently, on October 16, 2013, all claims against defendant Shevschenko were dismissed with prejudice pursuant to a stipulation, with each party to bear its own costs and attorneys' fees. (ECF No. 63.) Additionally, plaintiff has since settled all claims against defendant Almansky, and on April 15, 2014, the court entered a stipulated judgment for injunctive relief against defendant Almansky, with each party to bear its own costs. (ECF No. 67.) As such, GN Trade and Demin are the only remaining defendants.

The instant motion for default judgment against defendants GN Trade and Demin was filed on April 15, 2014, and served on defendants by mail. (ECF Nos. 68, 71.) As noted above, defendants failed to oppose the motion or even seek an extension of time to do so.

II.   LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at

---

[3] The reasons for the court's imposition of terminating sanctions were outlined in detail in the July 2, 2013 findings and recommendations (ECF No. 51), subsequently adopted by the district judge on August 29, 2013 (ECF No. 54), and are not repeated here.

stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. Geddes, 559 F.2d at 560.

III.   DISCUSSION

A. Appropriateness of the Entry of Default Judgment Under the Eitel Factors

For the reasons stated below, an evaluation of the Eitel factors supports the entry of a default judgment.

1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery against defendants. "Denying judgment

4

1  against a defendant who does not participate in litigation deprives the plaintiff of a remedy until
2  such time as the defendant chooses to litigate." Joe Hand Promotions, Inc. v. Be, 2011 WL
3  5105375, at *2 (N.D. Cal. Oct. 26, 2011).  Accordingly, the first Eitel factor favors the entry of a
4  default judgment.

5              2.  Factors Two and Three: The Merits of Plaintiff's Substantive Claims
6                  and the Sufficiency of the Complaint

7      The court evaluates the merits of plaintiff's substantive claims and the sufficiency of the
8  complaint together because of the relatedness of the two inquiries.  The court must consider
9  whether the allegations in the complaint are sufficient to state a claim that supports the relief
10 sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.
11     Each of plaintiff's claims are considered separately below.

12                  a. False designation of origin under 15 U.S.C. § 1125(a)(1)(A)

13     15 U.S.C. § 1125(a)(1) provides, in part, that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

20 15 U.S.C. § 1125(a)(1)(A).
21     In its complaint, plaintiff specifically alleged that defendants are selling plaintiff's Back
22 Shop products (in California and elsewhere in the United States) by removing or obliterating
23 plaintiff's label and affixing defendants' own label in its place.  (Compl. ¶ 16.)  Plaintiff further
24 alleged that by misidentifying plaintiff's products, defendants "have used and will continue to use
25 false designations of origin that are likely to cause confusion, mistake, or deception as to
26 affiliation, connection, or association of Defendants with Plaintiff and are also likely to cause
27 confusion as to the origin, sponsorship, or approval of Defendants' products or commercial
28 activities by Plaintiff…."  (Id. ¶ 19.)  Plaintiff alleged that defendants' willful and intentional

conduct is harmful to plaintiff, because it *inter alia* deprives plaintiff of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory products. (Id. ¶¶ 20, 22.) In light of these allegations, the court finds that plaintiff has adequately pled a claim under 15 U.S.C. § 1125(a)(1)(A).

### b. False advertising under 15 U.S.C. § 1125(a)(1)(B)

15 U.S.C. § 1125(a)(1) provides, in part, that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

Plaintiff's complaint alleged that defendants, willfully and intentionally, "have falsely stated and advertised the source/origin of their products and services in a manner intended to pass of their products/services as those of Plaintiff, or vice versa" and have thereby "created deception among consumers and members of the general public as to [the] nature, characteristics, or qualities of their products/services." (Compl. ¶¶ 24-25, 27.) Plaintiff contends that it has suffered, and continues to suffer, resulting harm, including harm to its goodwill. (Id. ¶¶ 20, 26.) Accordingly, the court concludes that plaintiff's complaint states a claim under 15 U.S.C. § 1125(a)(1)(B).

### c. Copyright infringement under 17 U.S.C. §§ 101 et seq.

To establish copyright infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Serv. Co., 499 U.S. 340, 361 (1991); see also Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000) ("A copyright plaintiff must prove (1) ownership of the copyright; and (2) infringement – that the defendant copied protected elements of the plaintiff's work."). "Registration is prima facie evidence of the validity of a copyright."

1  Three Boys Music Corp., 212 F.3d at 488-89.

2  In this case, plaintiff alleged it is the "exclusive owner/registrant of the following copyrights on file and/or registered with the United States Copyright Office…**U.S. Copyright Office Service Request No. 1-731472931** (dated 2/28/12); Title: Back Shop Die Tiefkühlbäcker Web Site; Nature of Work: *On line Work – Photos and Text*." (Compl. ¶ 29 [emphasis in original] & Ex. 1.) Plaintiff also alleges that, despite a notice of plaintiff's copyrights appearing on plaintiff's website, defendants, without plaintiff's consent, willfully reproduced the contents of the website in whole or in part, and used it on web pages controlled by defendants, thereby infringing plaintiff's exclusive rights to reproduce, display, and distribute the copyrighted works. (Id. ¶¶ 30-33.) Plaintiff further alleges that defendants have received substantial profits by virtue of their infringement. (Id. ¶ 34.) Taken together, these allegations state a cognizable claim for copyright infringement.

### d. Unfair business practices under Cal. Bus. & Prof. Code §§ 17200 et seq.

"Business and Professions Code section 17200 et seq. prohibits unfair competition, including unlawful, unfair, and fraudulent business acts. The UCL covers a wide range of conduct. It embraces anything that can properly be called a business practice and that at the same time is forbidden by law." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003) (citations and quotation marks omitted). "Section 17200 borrows violations from other laws by making them independently actionable as unfair competitive practices." Id. Because plaintiff has adequately alleged business practices by defendants that have violated the federal statutes discussed above, the court concludes that plaintiff also states a valid claim under California Business and Professions Code sections 17200 et seq.

Based on the above analysis, the court finds that plaintiff's complaint is sufficient and that plaintiff's substantive claims have merit. Therefore, the second and third Eitel factors favor the entry of a default judgment.

////

////

3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). By its motion for default judgment, plaintiff is not seeking monetary damages, but injunctive relief along with costs and attorneys' fees. The court notes that plaintiff's request for costs and attorneys' fees is substantial – plaintiff seeks a total of $118,065.26. However, because the court has discretion to review the reasonableness of the fees and costs incurred, and in fact recommends that the fee award be substantially reduced, the court finds that this Eitel factor does not ultimately militate against the entry of a default judgment.

4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The court may assume the truth of well-pled facts in the complaint (except as to damages) following the clerk's entry of default, and thus there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default… there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. As noted above, plaintiff has adequately pled its claims in this action, and the court thus concludes that the fifth Eitel factor favors a default judgment.

5. Factor Six: Whether Default Was Due To Excusable Neglect

"The sixth Eitel factor considers the possibility that the default resulted from excusable neglect." PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, the court directed the Clerk of Court to enter defendants' default after defendants failed to comply with their discovery obligations and several court orders. Defendants have not sought to set aside the entry of default, nor have they opposed the motion for default judgment. Accordingly, there is no indication that defendants' default resulted from excusable neglect; in fact, the record speaks to the contrary. Thus, the sixth Eitel factor favors entry of a default judgment.

////

          6.    <u>Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive. <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment. Indeed, in this case, defendants' own failure to comply with their discovery obligations and failure to comply with court orders have made a decision on the merits impracticable, if not impossible.

Upon consideration of all the <u>Eitel</u> factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendants, and recommends that such a default judgment be entered. All that remains is the determination of the relief to which plaintiff is entitled.

     B.  <u>Terms of the Judgment to be Entered</u>

After determining that a party is entitled to the entry of default judgment, the court must determine the terms of the judgment to be entered. In its motion for default judgment, plaintiff requests injunctive relief, as well as attorneys' fees and costs, and these forms of relief were also requested in plaintiff's complaint. (Compl. at 9-10.) Each form of relief is addressed separately below.

     <u>Injunctive Relief</u>

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).

////

In this case, plaintiff has alleged that defendants' past and continued misrepresentations and infringement have resulted in irreparable harm, such as harm to plaintiff's goodwill, for which remedies at law are inadequate. (Compl. ¶¶ 18-21, 26, 40.)  See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) ("[W]e have also recognized that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.").  Additionally, the balance of hardships tips strongly in plaintiff's favor.  In contrast to the irreparable harm that plaintiff would suffer by defendants' continued misrepresentations and infringement, defendants would not be harmed by an injunction which essentially requires them to discontinue unlawful conduct; nor would the public interest be disserved by such an injunction.

Therefore, plaintiff has made an adequate showing that injunctive relief is appropriate. The court recommends that a permanent injunction be entered along the terms proposed by plaintiff in its motion.  (See ECF No. 68 at 12.)  Notably, the requested injunction is virtually identical to the stipulated judgment for injunctive relief against defendant Almansky that was previously entered by the district judge on April 15, 2014.  (ECF No. 67.)

Attorneys' Fees and Costs

*Attorneys' Fees*

Plaintiff requests $104,568.00 in billed attorneys' fees.

In cases involving a violation of 15 U.S.C. § 1125(a), the court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  To be deemed an exceptional case, the defendants' conduct must have been "malicious, fraudulent, deliberate or willful." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993).  "Additionally, a case may be deemed exceptional, and merit an award of attorneys' fees under the Lanham Act, when Defendant disregards the proceedings and does not appear." Philip Morris USA, Inc., 219 F.R.D. at 502.  Here, plaintiff is the prevailing party, and plaintiff has expressly alleged that

10

1  defendants' conduct was willful and intentional, providing factual allegations to support that
2  contention.  Furthermore, although defendants initially appeared in the action, they have since
3  disregarded these proceedings, resulting in the entry of their default and the functional equivalent
4  of a failure to appear.  Therefore, the court finds that plaintiff is entitled to an award of reasonable
5  attorneys' fees.
6      As the Ninth Circuit has explained:

> When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. Next, in appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation.

11  Secalt S.A. v. Wuxi Shenxi Construction Machinery Co., 668 F.3d 677, 689 (9th Cir. 2012)
12  (quoting Intel Corp. v. Terabyte Int'l Inc., 6 F.3d 614, 622 (9th Cir. 1993)).  The factors listed in
13  Kerr are: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved,
14  (3) the skill requisite to perform the legal service properly, (4) the preclusion of other
15  employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the
16  fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the
17  amount involved and the results obtained, (9) the experience, reputation, and ability of the
18  attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional
19  relationship with the client, and (12) awards in similar cases."  Kerr, 526 F.2d at 70.
20      In this case, plaintiff indicates that Glenn Peterson, who is lead counsel for plaintiff and
21  has been practicing in the Sacramento legal market since November 1989, billed at a maximum
22  hourly rate of $350.  Two other attorneys at Mr. Peterson's firm, Pamela Bertani and Stephen
23  Hamilton, also billed on the case at maximum hourly rates of $275 and $200, respectively.
24  (Declaration of Glenn W. Peterson, ECF No. 69 ["Peterson Decl."] ¶¶ 7, 10-11.)  The court finds
25  these hourly rates to be reasonable considering the prevailing hourly rates in the Sacramento legal
26  market.
27      With respect to the number of hours expended, the court does not generally question the
28  reasonableness of the amount of time plaintiff's counsel spent working on this matter.

1    Nevertheless, in its discretion, the court deducts from the fee award any time that was spent
2    primarily on matters concerning the other defendants (defendants Almansky and Shevchenko), as
3    well as time for which the description of work in the time entry did not permit the court to even
4    broadly discern what type of work plaintiff's counsel performed.[4]  In particular, the court deducts
5    the following time entries billed at the applicable rates on the following dates:  3/8/12; 3/9/12;
6    3/13/12; 3/15/12; 3/16/12; 3/19/12; 3/20/12; 3/28/12; 3/30/12; 4/3/12; 4/23/12; 4/24/12; 5/1/12;
7    5/3/12; 5/18/12; 9/18/12; 10/2/12; 11/19/12; 11/20/12; 12/4/12; 12/7/12; 12/14/12; 12/17/12;
8    12/18/12; 12/19/12; 12/20/12; 12/31/12; 1/27/13; 2/26/13; 3/7/13; 4/1/13; 4/3/13; 4/9/13; 4/12/13;
9    4/15/13; 4/18/13; 4/19/13; 4/24/13; 4/26/13; 5/13/13 (2.0 hours only); 5/15/13; 5/21/13; 5/28/13;
10   5/30/13; 6/3/13; 6/5/13; 6/6/13; 6/13/13 (0.6 hours only); 6/17/13; 6/18/13; 6/19/13; 6/20/13;
11   6/21/13; 6/28/13; 7/1/13; 7/2/13 (1.1 hours only); 7/9/13; 7/10/13; 7/11/13; 7/12/13; 7/15/13;
12   7/22/13; 7/24/13; 8/14/13; 8/15/13; 8/16/13; 8/20/13; 8/21/13; 8/22/13; 8/23/13; 8/26/13; 8/29/13;
13   8/30/13; 9/4/13; 9/9/13; 9/21/13; 10/2/13; 10/14/13; 10/16/13; 1/29/14; 2/19/14; 3/10/14; and
14   3/25/14.  After these deductions, the fee award comes to $55,801.50.[5]

15        Plaintiff has not argued that adjustment pursuant to any of the Kerr factors is warranted in
16   this case, and the record before the court does not otherwise suggest that adjustment is necessary.
17   Therefore, the court recommends that plaintiff be awarded $55,801.50 in attorneys' fees (not
18   including non-taxable costs that are technically also awarded as attorneys' fees, as discussed
19   further below).

20        *Costs*

21        "When…a violation under section 1125(a) or (d) of this title…shall have been established
22   in any civil action arising under this chapter, the plaintiff shall be entitled…subject to principles

23

---

24   [4] While the court appreciates that time entries can sometimes reveal privileged subject matter, an attorney must at least broadly describe the work performed in a manner that permits the court to
25   evaluate whether the time was reasonably spent on some activity related to the case.

26   [5] The court notes that plaintiff's counsel also requests unbilled time totaling $1,750.00 "which
27   reflects work done in October, for which invoices have not yet been generated." (Peterson Decl. ¶ 8.)  Because the court cannot determine what activities that unbilled time was spent on and
28   whether the time was reasonably spent, the court declines to award such additional funds.

of equity, to recover…the costs of the action." 15 U.S.C. § 1117(a); see also Philip Morris USA, Inc., 219 F.R.D. at 502-03 ("Thus, a finding of Defendant's liability under the Lanham Act entitles Plaintiff to recover its costs in this action that are specific to Defendant."). The Ninth Circuit has held that a prevailing party may recover reasonable costs not otherwise taxable under 28 U.S.C. § 1920 as attorneys' fees under the Lanham Act. Secalt S.A. v. Wuxi Shenxi Construction Machinery Co., 668 F.3d 677, 690 (9th Cir. 2012) ("Finally, attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party.'"). As noted above, the court has concluded that plaintiff is entitled to an award of attorneys' fees, which would therefore include reasonable non-taxable costs.

Plaintiff seeks a total of $11,747.26 in costs.[6] (See Peterson Decl.) In its discretion, and pursuant to principles of equity, the court declines to award the following costs, which relate more specifically to the other previously-terminated defendants:

(a) Expenses related to service of process on defendant Almansky ($205 billed on 3/8/12) and defendant Shevchenko ($190 billed on 3/13/12)

(b) Expenses related to the deposition of defendant Almansky, including travel, parking, transcript services, and video services ($473.80 billed on 6/17/13; $2,208.50 billed on 7/1/13; $29 billed on 7/1/13; $35 billed on 7/1/13; $473.80 billed on 7/1/13; and $1,836.30 billed on 7/21/2013)

(c) Expenses related to deposition of defendant Shevchenko ($732.30 billed on 8/22/13).

Furthermore, the court does not award the cost of $35 to e-file a visual art registration form with the U.S. Copyright Office, billed on 3/1/12, which does not appear to be a litigation cost but instead a cost incurred to obtain some type of benefit from the U.S. Copyright Office. Finally, the court declines to award a $150 cost billed on 4/26/13 for "use of a conference room," because the billing entry entirely fails to explain how that cost relates to this action.

After deducting the above-mentioned costs, the court awards plaintiff $5,378.56 in costs (including any non-taxable costs technically awarded as attorneys' fees).

---

[6] Although, as noted above, any non-taxable costs are technically awarded as attorneys' fees, they are included in the calculation of costs in this order for convenience only.

### IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that, within three (3) days after these findings and recommendations are filed, plaintiff shall serve a copy of the findings and recommendations on defendants by mail at their last known addresses, and shall forthwith file proof of such service.

IT IS ALSO HEREBY RECOMMENDED that:

1. Back Shop Tiefkühl GmbH's ("plaintiff") motion for default judgment (ECF No. 68) be granted in part along the following terms.

2. Defendants GN Trade, Inc. and Vladimir Demin ("defendants"), and their subsidiaries, affiliates, agents, servants, employees, and all persons acting under or in concert with them, be permanently enjoined from:

(i) using plaintiff's copyrighted works underlying this lawsuit and protected by the following certificates of registration: U.S. Copyright Office Service Request No. 1-731472931 (dated 2/28/12); Title: Back Shop Die Tiefkühlbäcker Web Site; Nature of Work: Online Work – Photos and Text.

(ii) Using, running, downloading, or reproducing any version of plaintiff's website and/or the text and images portrayed therein, as well as plaintiff's article numbers depicted in plaintiff's product catalogue.

(iii) Directly or indirectly using in commerce the trademarks BACK SHOP, HARRY BROT, or any words, marks, or phrases confusingly similar thereto, either alone or in combination with other words, marks, or phrases, and including any plural forms, in any style, form, or media whatsoever, including without limitation, on or in connection with the Internet, such as in an Internet domain name, as a sponsored link or associated keyword, in connection with an Internet web page, or as HTML code for an Internet website in any manner, such as the title or keyword portions of a metatag, or otherwise.

3. Defendants be ordered to pay plaintiff attorneys' fees and costs in the total amount of $61,180.06.

4. Defendants be required to pay any prejudgment and post-judgment interest to which plaintiff may be entitled under applicable law.

1     5. The Clerk of Court be directed to vacate all dates and close this case.

2     These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated:  June 16, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE